Second case this morning, Peoples Light, Gas and Light, Coke Company v. Beazer East Inc. Mr. Martin. Yes. May it please the Court, my name is Craig Martin. I represent Peoples in this appeal, the appellant. There's essentially two issues. One is a contractual release issue. The second is a statutory issue with regard to a statute of limitations. I'll spend most of my time devoted to the release issue. With respect to the release, Peoples did not release coppers from CERCLA liability as an operator. The Court is called upon to interpret a contract that is approximately 95 years old. It was entered on February 20th, 2020. That's the relevant agreement, and CERCLA, as the Court well knows, was passed in 1980. The standard on review is de novo. This arises from a 12 v. 6 grant of a motion to dismiss, and this is purely a contractual interpretation issue. I would like to turn the Court's attention to the relevant language of the contract. It is at pages 5 and 6 of our brief, and it is paragraph 48 of the relevant contractual document. And I would suggest to the Court that while the Court obviously interprets the contract as a whole, and there's principles of contractual interpretation, this is a case not about legal principles of contractual interpretation. This is really a case about the language of the particular contract and the language of paragraph 48. So without further ado, I'd like to turn to paragraph 48. Paragraph 48 essentially describes coppers' obligation to operate a manufactured gas plant. And the paragraph begins, and I'm just going to go through it because it's easiest to go through it. The paragraph begins, and it says, the obligation to be assumed by coppers with respect to the operation of the proposed by-product coke plant shall be limited to operating it or supervising the operation thereof for and in behalf and in the name of coke, without liability of any character on the part of coppers except as expressly assumed under the terms of the contract, and shall cover the periods contemplated by paragraphs 54 and 60. And then in the very next sentence, it explains what it means by except as expressly assumed under the contract. And the next sentence goes on to say, coppers shall assume full responsibility for the efficient operation and for the maintenance of the plant in good working order during the period of operation by coppers. With regard to the paragraph, paragraph 48, it expressly lays out that coppers shall operate the manufactured gas plant. It is from the operation of the manufactured gas plant that CERCLA liability arises. The final clause of that particular paragraph has another exception, and it follows after it says, during the period of operation by coppers, but the expense of such operation and maintenance or loss incident thereto shall be borne by coke as hereinafter provided. In other words, the accounting expenses and any economic losses. So the contract entered into in 1920, prior to the time of the EPA, making no reference to pollution, prior to the time of, for example, the pollution exclusion to insurance contracts, specifically lays out that coppers will operate the plant and has responsibility for operation of the plant during the period of its operation. And it has this really broad language without liability of any character. Exactly. And that's pretty broad. That is broad. And then it goes on to explain, then it goes on to say, except as expressly assumed, and then in the very next sentence designates that coppers shall assume full responsibility for the efficient operation during the period of operation. And the heading of the paragraph is coppers obligation to operate. So it's, and it's out of the operation of the plant that CERCLA liability arises. So the language specific to that paragraph with regard to operation is the critical language for liability. Well, it actually says good working order during the period of operation. Yes, but the point is that it's about the operation of the plant. You could have a plant that was operated well or a plant that was not operated well. Well, you could still operate in good working order and still be producing the problem that you have now. Exactly. You could be working in good operating order. You could be working in bad operating order. It's out of the operation that CERCLA liability arises. It's by virtue of who operates the plant that CERCLA operation arises. And then if you fast forward to today, the way CERCLA would approach that issue is CERCLA would then do an equitable allocation under well-established principles. So the fact that it says, it could say good, bad, indifferent operation, it's the operating of the plant that gives rise to the CERCLA liability. Well, CERCLA certainly gives private parties the right to shift CERCLA liability. I mean, that's what's developed in the law now that CERCLA has come into existence. Yes, that's absolutely true. CERCLA gives... And this applies to pre-CERCLA agreements when the contractual language is broad enough to cover all liabilities, environmental or otherwise. Correct. We agree with the general principle of law. In terms of the particular language of the contract, however, the particular language, that paragraph 48 is, with all due respect, not a classic broad and unequivocal release, and it is not a release that gives you any hint that it's talking of pollution or environmental contamination. And later at the end of 48 though, it says, but the expense of such operation and maintenance or loss incident thereto shall be Yes. And expenses and losses incident to expenses is, in our view, clearly referring to the accounting expenses and the things that you would think about in terms of profit and loss of operations. And that's supported by looking at paragraphs 53 and 54 of the what those types of things are. But basically, you're trying to say that the parties here would have included, would not have included the release at all if they intended to revoke the release in the very next sentence. I mean, just in terms of how, right. Correct. So what they give with one hand, they take away with the next. Yeah, and what they do is they tag, they have, they don't have the classic broad release, obviously. They don't have any reference to environmental contamination or pollution. And what they do is they tag operation. The whole purpose of the paragraph is to say that coppers shall operate the plant. It is the operation of the plant out of which CERCLA liability arises. The expenses and losses, and I know it's hard to flash back to 1920 for some of us. The expenses and losses. None of us were born. Exactly. Even Bill Bauer was born then. The expenses and losses is an accounting term going back there too. So essentially the way the contract is structured, right, the contract is structured in a way that the company owns the plant and operates the plant. They set up a shell corporation called Coke and then Peoples buys the gas and sends plenty of money to coppers along the way so that they get plenty of profits to pay for the building of the plant and so forth. So, you know, when you look at the contract and you can compare it, the reason I say, Your Honor, that it's not about the law, this particular case, this is, you know, a 95 year old contract. It doesn't have language of broad and unequivocal release and what it does make clear is that coppers is the operator of the plant. That's all you need to get CERCLA liability. Well, suppose that there would be, because the anticipated this sort of environmental problems of being subjected to these kind of costs, but suppose it was a fire that developed on an adjacent property because the operation of the facility. Who would be responsible for the damages resulting from that under the contract? I think it would be the operator of the plant with regard to that kind of example if you created a contract. Well, except as expressly assumed, one of the duties expressly assumed is full responsibility for operation. So that's where you're saying it would be the fire, for example, would be the responsibility of the cop. Yeah, and I think, Your Honor, to be fair, you could get into fights about whether it arose in that hypothetical, about whether it arose out of the good or bad operation of the plant and so forth. In the instance of CERCLA, as we know, CERCLA doesn't really look at whether you're good or bad. It just looks at whether you operate. Right. I mean, this may have been, you might have been the most efficient operator in the world and you were still polluting in 1920 and 21 and 22 and 23. CERCLA is a so what statute. They tag you with liability going back in time that arises out of the operation of the plant. So the way this is written, it is clearly not written, nobody knows about CERCLA and arguably nobody even knows about pollution. Right. But the way this is written at the time is it makes it clear as to who operates the plant and the person responsible for operating the plant or the entity responsible is COPPERS. And that's from which, that's how liability arises. Now COPPERS says a couple of things in their briefs, which I think are just irrelevant as a matter of law. And one is they say that, hey, look at this contract, it was simply a financing arrangement. Our response is, so what? It doesn't matter. What matters is that COPPERS operated the plant. You could argue about who financed the plant. It was probably the people who bought the bonds, not COPPERS, but they operated the plant. COPPERS makes an argument in So what? The issue is who operated the plant. Now you can make arguments about what could have, what the liability should be, what an equitable approach should be, but those are arguments to be dealt with under CERCLA on remand when you're actually allocating liability between the various responsible parties. So I think that's what that provision means and implies. And if you compare it, if you wanted to flash back to 1920 and say, gosh, could I write a release that would release any liability for future events like this, you could write very broad and unequivocal releases. This language is far from an unequivocal and broad release and at best it's subject to more than one reasonable interpretation. Our view, quite honestly, while we make that argument in the briefs about ambiguity, quite honestly, our view is that this clearly puts operation on COPPERS and that's where it is for CERCLA. The second argument in our brief I'll just quickly pass through and that is we essentially argue that there is no limitation period that applies to the first two AOCs in this case. There's a 2007 and 2008 AOC. One is for engineering evaluation and cost analysis, the other is for remedial investigation feasibility. With regard to those AOCs on the face of them, you can see that there's approximately $100,000 in past costs that are paid to the EPA. With regard to cost recovery settlements, we essentially argue that this is not a cost recovery settlement for purposes of 122H. There is no designation as such in those AOCs and with regard to cost recovery settlements, the purpose of the settlement and we cite some commentary from the EPA as well as cases. The purpose of those two early AOCs, 07 and 08, is essentially to give a plan as to how to attack the site going forward in the future with very minimal costs and that's on the face of those particular documents. In addition, we say that these are not 122H cost recovery settlements because they are not, they don't satisfy their requirements of publication and a fair notice period. The other side, that's a 122I argument, the other side says that we waived that. We didn't waive it because we made the argument that this was not a 122H cost recovery settlement below and that's just additional support. It's a no prejudice. So with regard to the appeal, I've reserved about four minutes of time to address you when I come back up, but the main issue to be clear is paragraph 48. It's the operation language and the fact that Coppers was the operator. That is not a release of operator liability. Thank you. Thank you. Kevin Douglas and Anthony Hopp for Beezer East. May it please the court. With regard to the release issue, we agree that circular liability can be released or transferred by the parties. We agree that the release either needs to be specific enough to include circular type liability, i.e. it has to be in agreement, and we agree that the other method is that the release is broad enough to include any and all environmental liability. It does not have to include all liabilities. It has to be broad enough to include any and all environmental liability and these are the broad provisions that you see when old contracts are discussed. So two straightforward questions. One, is the release broad enough to include environmental liability? And if yes, are there any exceptions that reassign that liability back to Coppers? So I take it in two steps. The first step is, do we have the broad type language that you need to transfer environmental type liability from one party to another? If you have that, then the second step the reassigns that liability back to the original party that just got rid of it. And you need to go through that two-step process while you're reviewing paragraph 48 and the rest of the agreement. The Beezer Mead case goes through that exact analysis. Seller indemnifies buyer and then it had language in there except in the Beezer contract to determine, okay, did the buyer reassume the liability it just got rid of? So that's the analysis that the Beezer Mead case goes through and it's also the analysis that several of the cases that we cited in our letter to the court go through. So with regard to that case, would you refresh or at least refresh my recollection? What was the outcome of it? The outcome of the case was that the court looked at the broad language first and said, hey, this is broad enough. Then it went to the specific language and that case was much more recent in time. So the specific language as to whether buyer reassumed the liability, there were a number of environmental provisions in the contract where the buyer either had to, the buyer assumed certain environmental liabilities and the issue before the We're within the environmental context where we weren't before. People were looking at environmental issues. Correct, and my only point in citing the Beezer Mead case was to say the process they went through. One, broad enough. Two, any other provision in the agreement that makes you put it back in. That's the process we think the court should follow. Clearly under the first sentence of paragraph 48, we think that you could not come up with broader language without liability of any character. Then it goes on to say, and obviously, except as expressly assumed under the terms of the contract. So our view is broad language, okay, is there anywhere else in the contract that gives the liability back to coppers? So when you look at the second sentence, I'd like to discuss that first. Did that second sentence, or anywhere in the contract, cause coppers to reassume the environmental liability that it was just released from in the prior sentence? If the parties had in the first sentence to absolve coppers of all liability, and then in the second sentence, to give it right back, it makes no sense. And in fact, if the parties wanted to do that, they could have done what they did in paragraph 63 of the 1920 agreement on pages B32 and 33 of our record, and pages 30 and 31 of the contract. It's going to be hard for you to follow because that's a lengthy provision, but essentially what it says is, there is a provision where coppers did reassume liability, and that was with respect to indemnifying Peoples and Chicago Coke for patent infringement arising out of the operation of the plant, and coppers agreed to discharge Peoples and Chicago Coke from all liability on account thereof. So if the goal was to give it to coppers in the first sentence of 48, and immediately take it away, why didn't it talk about, hey, you have no liability, but oh, you have liability for operations. That makes no sense, and if that's what the parties intended to do, they sure could have done it as they did in paragraph 63 of the agreement. Peoples' interpretation, and the only interpretation they offer in their brief, is not reasonable. This language is not ambiguous. The interpretation they offer is the interpretation Your Honor mentioned earlier, which is, first sentence clearly absolves coppers of liability. Second sentence, are you saying it gives all the liability back again for operations? Doesn't make any sense. It renders the first sentence a nullity, and if the parties wanted to do that, they could have done it as they did in paragraph 63. It's our position, the second sentence had another purpose. It doesn't talk about liability, it talks about responsibility. Responsibility for... What's the difference? Responsibility for efficient operation, and for maintenance in good working order. And if it isn't, then what? And if it isn't, there might be a contractual claim during the time that coppers operate. I'm sorry? We're talking about the difference between liability. Yes, but we're talking about... If they don't meet their responsibility, are they then liable? They may have, during the period of time they were operating the plant, some contractual... No, no, no, just as an abstraction. Isn't liability predicated on failure to perform what you're supposed to? Responsibility? Yes, sir, but if there is... Okay, what's the difference? If there is any liability associated with the responsibility in that second sentence, it is liability to efficiently operate the plant and maintain it in good working order while coppers is there. And I'll make an important point for you. Even Peoples makes the point in their brief that this warranty type language, and that's what we would suggest coppers was agreeing. Hey, while we're there, we'll efficiently operate the plant, we'll maintain it. The question for the court is, is that broad enough to put environmental type liability back into play when it was just taken out in the prior sentence? Peoples concedes in their brief, in their reply brief, that contractual and warranty type provisions don't shift liabilities between the parties. That's exactly our point. The liability shifting provision was in the first sentence, and the question is, does the second sentence impact the broad release of environmental liabilities? Our suggestion to you is it clearly does not. And all of this is consistent with our interpretation of the contract as a whole, and the only reason we've mentioned the contract as a whole in the brief is to point out, look, Peoples put up no money to build this plant. Coppers built it, they operated it until they could get their money out of it, and then it was agreed. The stock was in escrow, being held for Peoples. The stock in Chicago Coke. So as soon as the construction and operation was complete and Coppers was made whole, ownership, operations, everything goes back to Peoples. So it would be consistent with the idea that, hey, Coppers is going to have no liability here because it's a temporary situation in order to finance the operation of the plant. A couple of quick points about the broad language in the first sentence. It doesn't include any limitations like as of the closing date, as of the date of the agreement. When it talks about without liability of any character, I can't think of a provision that is broader. In the context of the 1920 agreement, one of the things that Peoples harps on is it has to cover future liabilities. Clearly, any liabilities at stake here when a plant has not even been constructed, it isn't operating when they sign this contract, all of the conduct and all of the liabilities that will arise are future liabilities. They make a point in their brief about the fact that, hey, a broad release that relates to operations still isn't quite sufficient because it's just limited to operations. But in fact, that's the only obligation that Coppers was assuming under the contract, to operate the plant. And if you look at the E.I. DuPont case that we cite in our letter to the court, it found that an indemnity provision was broad enough to transfer surplus type liability where it encompassed a contractor's work who was operating a plant and it encompassed the work. Here, we think it's the same thing. It's encompassing operations. All that contractor was responsible for was the work in operating the plant and the same is true here. All we're responsible for is operations and for that, we have no liability. Finally, with respect to this broad provision, there's some mention in their brief about the Village of Fox River case and the fact that somehow knowledge of environmental matters needs to be in play. It's confusing, but clearly that isn't the case with the 1920 agreement. The parties didn't contemplate environmental liabilities and you don't have to contemplate them with a broad release. The key in the Village of Fox River case, and the reason the point made by Peoples can be distinguished, is that the knowledge issue involved a release of claims, not a release of liabilities. So when you have a release of claims, yeah, maybe you have to have knowledge of the claims that existed at the time of the release. Here, we've got a release of liability. Quickly, with respect to the statute of limitations issue, I want to make a couple of quick points. Both of these AOCs involve reimbursement for costs. No question about it, there are actual costs that are being reimbursed under both the 2007 and the 2008 agreement. 2007, it's about $121,000. 2008, it's about $27,000. So that's different than even the trial court decision in LWD and it's different than Hobart, where there were no past costs involved. If you've got past costs involved in the AOC, then clearly that is a trigger event under 113 G3. It's a 122H cost recovery settlement. We think clearly this falls within the triggering events. As to the waiver issue, we do think the procedural safeguard argument has been waived. I'll point you to the LWD Sixth Circuit case, where legislative history was attempted to be brought up by one of the parties at the circuit court. And the court said, even though the statute of limitations issue was in play at the district court level, we're not letting you bring up legislative history now. That's waived. And finally, even if these settlement agreements don't constitute triggering events under 113 G3, clearly, at least under the standards followed by the Hobart Sixth Circuit decision, it doesn't matter because the court is not permitted to borrow from a statute of limitations involving cost recovery claims. You can only borrow from contribution action statute of limitations. And if you look at the Cooper's Industry case, the Atlantic Research case, you've got one cause of action for cost recovery. You've got one cause of action for contribution. You've got one set of statute of limitations for cost recovery, one of seven claims, one set of statute of limitations for contribution claims. And that is the law of the land, including the Bernstein case in the Seventh Circuit. Two distinct avenues for contribution and two applicable statute of limitations for contribution. And yet what's being suggested is that this court should borrow from the cost recovery statute of limitations under CERCLA. That notion has been rejected. It's most recently been rejected in Hobart. Clearly, this court should borrow a statute of limitations. They should borrow the statute of limitations even if there is no triggering event. They should borrow the statute of limitations from 113G.3. And one further point, Peoples clearly was aware of Copper's all the way back in 2007, so there's no prejudice to them here. They've known about Copper's forever. On page, the 2007 AOC, page eight of the agreement, there's a paragraph that expressly discusses Copper's involvement. So this isn't an instance where they were caught by surprise and couldn't have filed suit long before, they just chose not to do it. Thank you. Thank you, Counsel. How much time? Sure, you ran it out. Can I have one minute? Oh, all right, you can have one minute. Thank you. The two points, and then I'll be done. One is the two things that are absolutely clear with regard to this contract is that Copper's was to operate and under CERCLA, liability arises out of operation of the plant, and that's what paragraph 48 contains. It tells you who operates the plant during the period of time. The second is with regard to if you want to put your 1920s hat on and start thinking about the types of things that wouldn't be assumed in operations and kind of roll through those analogies. You can think about labor costs. You can think about materials costs. You can think about legal fees and so forth. There are other things that are not necessarily encompassed by operation, but the main point of this case and the main point of paragraph 48 is that it clearly assigns to a party who operates under the contract, and it's Copper's that operates. And then 60 years later, CERCLA comes along and it doesn't care who's right or who's wrong, who does well or who doesn't well, doesn't do well. It's simply about operation. So thank you. Thank you. Thanks to both counsel and the case will be taken under advice.